CASE
8:25-CV-02489-TJS

# Exhibit A

USBC-MD B FILED DB
2 APR '26 PM11:08

CASE 8:25-CV-02489-TJS

1

**REPORT OF INVESTIGATION – CAULTON ALLEN**
**CASE NUMBER: 2020-08MD[1]**

**NATIONAL ARCHIVES AND RECORDS ADMINISTRATION**

---

**I.    INTRODUCTION: COMPLAINANT, AGENCY, AND PARTIES**

1. **Complainant**

   Caulton Allen
   P.O. Box 113
   Temple Hills, MD 20757
   (202) 359-1759
   Caulton.Allen@comcast.net[2]

2. **Representative for Complainant -** None

3. **Complainant's Job Title/Series/Grade** – Independent Contractor; no series or grade

4. **Organizational Unit and Address (Involved Agency)**

   Office of Equal Employment Opportunity
   National Archives and Records Administration ("NARA")
   8601 Adelphi Road, Room 3310
   College Park, MD 20740

   Office of Civil Rights
   Consumer Financial Protection Bureau ("CFBP")
   1700 G Street, NW
   Washington, DC 20552

5. **Identity of Responsible Management Official (RMO)[3]**

---

[1] *See* Investigator Memorandum for a procedural overview of this case. (Tab G-2)
[2] Pursuant to Complainant's Formal EEO Complaint, all correspondence regarding his EEO complaint is to be sent to this email address.
[3] With the exception of Emily Stephenson, the contact information for each individual listed in this section is the contact information as provided by Complainant in his original complaint. Not all of the NARA individuals were determined by Investigator Ryan to be an RMO. Complainant failed to respond to inquiries by Investigator Ryan as to whether there was an RMO at the Consumer Financial Protection Bureau (CFPB) that should be contacted. Investigator Ryan made a determination to designate Emily Stephenson as an RMO. *See also* Investigator Memorandum. (Tab G-2)

2

000001

Erica Pearson
EEO Director
Office of Equal Employment Opportunity
NARA
8601 Adelphi Road, Room 3310
College Park, MD 20740-6001
(301) 837-0295 (Office)
(301) 708-1513 (Work Cell)
Erica.Pearson@nara.gov

Tammie L. Johnson
Complaints Program Manager
Office of Equal Employment Opportunity Programs
NARA
(301) 837-1966
Tammie.Johnson@nara.gov

Halena Lawson
Prior EEO Assistant, NARA
Currently employed USDA

Melissa Canavan
HR Specialist
Contact Information Unknown

David S. Ferriero
Archivist of the United States
David.Ferriero@nara.gov

Debra Steidel Wall
Deputy Archivist of the United States
Debra.Wall@nara.gov

Maria Carosa Stanwich
Chief of Staff
Maria.Stanwich@nara.gov

Emily Stephenson
Supervisor Attorney-Advisor
Office of Civil Rights
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-9814
Emily.Stephenson@cfpb.gov

Summary Page 2

3

000002

## II.    DESCRIPTION OF INVESTIGATION

1.    **Investigator[4]:**

Suzanne Ryan ("Investigator Ryan")
Law Offices of Stuart L. Plotnick, LLC
51 Monroe Street, Suite 707
Rockville, Maryland 20850
Telephone: (301) 251-1286
Direct Line: (301) 660-2100

2.    **Location:**    Telephonic/Written Interviews

3.    **Dates of alleged discrimination:**    January 7, 2020; June 1, 2020

4.    **Date of Counselor contact:**    None[5]

5.    **Date complaint filed[6]:**    February 14, 2020; September 11, 2020

6.    **Date assigned for investigation:**    September 10, 2020

7.    **Period of investigation[7]:**    September 10, 2020 to October 27, 2020

## III.    ISSUES IN THE COMPLAINT AND RELIEF SOUGHT

1.    **Nature of actions, decisions, or conditions giving rise to the Complaint:**

Non Selection; Retaliation

2.    **Bases of discrimination:**

Age, Disability, Reprisal

3.    **Requested relief:**

Per the Formal Complaint
- Appointment to a position similar to the EE Specialist positions to which Complainant applied;

---

[4] CFPB conducted the initial investigation. *See also* Investigator Memorandum. (Tab G-2) During the time that CFPB was conducting the investigation, there were two investigators, Bettie Kennedy and Pam Bethel. Parts of the investigation that were completed by those individuals have been included in the work of the current investigator, Investigator Ryan.

[5] *See* Tab B for explanation as to why counseling was not provided.

[6] Although a second claim was added, no Amended Formal Complaint was submitted; *See* correspondence dated September 11, 2020 regarding the acceptance of Complainant's amended complaint. (Tab C)

[7] These dates are specific to the investigation conducted by Investigator Ryan. However, affidavits executed while the investigation was conducted by CFPB were utilized in this investigation. *See also* Investigator Memorandum. (Tab G-2)

Summary Page 3

- Back pay and benefits;
- Attorney fees;
- Damages; or
- A financial settlement

Per Complainant's (partially executed) Affidavit[8]
- Appointment to a position comparable to the GS-0260-9, 11, or 13 EEO Specialist positions at issue in Complainant's complaint;
- Back pay and benefits;
- Attorney fees;
- Damages; or
- A financial settlement;
- Notification in all future Agency vacancy announcements that includes verbiage explaining how disabled applicants can apply under Schedule A through the Agency's internal policy outside USA jobs, including identifying the name of a point of contact ("POC")/Special Placement Program Coordinator ("SPPC") and information that includes the POC/SPPC's email address and telephone number where they can be contacted for information;
- Notification in all future Agency vacancy announcements that includes verbiage explaining the differences in requesting consideration as Schedule A applicant based on status in the vacancy announcement and requesting consideration through the Agency's internal policy outside USA jobs. The notification should also include information identifying the name of a point of contact ("POC")/Special Placement Program Coordinator ("SPPC") and information, that includes the POC/SPPC's email address and telephone number where they can be contacted for information.

## IV.    SUMMARY OF FACTS

In his initial claim, Complainant states that he was discriminated against on the bases of age and disability, and was the subject of reprisal, by being denied equal access during the recruitment and selection process for three EEO Specialist positions, and that said discrimination and retaliation resulted in Complainant's non-selection for the positions.

Complainant subsequently amended his claim, stating that he was the subject of further retaliation by officials in the Office of Civil Rights, Consumer Financial Protection Bureau[9], during the investigation of his initial claim.

When the incidents of this Complaint occurred, Complainant was an Independent Contractor but not working on any cases.  Complainant applied for two positions at NARA, a GS-9, Equal Employment Opportunity Specialist ("EEOS") and a GS-11 EEOS.  Complainant was not selected to be interviewed for either position.  He states that the reasons that he believes he was

---

[8] Said Affidavit was completed during the time that CFPB was conducting the investigation. Complainant initialed pages 1-21 of 27 pages; pages 22-27 were not initialed by Complainant, nor has the Affidavit been signed or dated. (Tab F-1)

[9] CFPB was investigating the complaint due to an actual or perceived conflict at NARA.

5

000004

*retaliation occurred from myself or the panel members for these vacancies.*

Ms. Pearson states that she does not know if Complainant applied for the positions pursuant to the Schedule A hiring authority. She further states that the Schedule A hiring process is a function of the HR office.

In describing the selection process for the positions at issue in Complainant's complaint, Ms. Pearson states,

> *The vacancies are posted on USA Jobs, after HR reviews resumes the qualified applicants for [sic] sent to the hiring manager. Interviews are then conducted and a selection can be made.*

Ms. Pearson states that she believes Complainant applied via USA Jobs for the GS-9 and GS-11 positions[18] but that she is not aware if Complainant applied for the GS-13 position[19][20]. Ms. Pearson is not aware if Complainant was placed on the best qualified list as she does not perform this function as a part of the hiring process.

Ms. Pearson states that for applicants to be selected for an interview they needed a score of 97 for the GS-9 position and a score of 98 for the GS-11 position. For the GS-13 position, all individuals on the certificate were interviewed. She further states that Complainant was not interviewed for the GS-9 or GS-11 position because he did not receive the required score and that he was not interviewed for the GS-13 position because he was not on the GS-13 certificate. For the individuals that were interviewed, Ms. Pearson does not know the candidates' ages or whether they identify with a disability. She also does not know if they applied via the Schedule A process.

Ms. Pearson states that Complainant's age and disability did not play a role in the Agency's decision to not hire Complainant.

Ms. Pearson states that no selections were made for the vacancies at issue in Complainant's complaint.

**Ms. Tammie Johnson** (Tab F-3, Page 130)

**Ms. Tammie Johnson**, (RMO: May 1962) was the Complaints Program Manager, GS-0260-14, when the initial incidents of this complaint occurred. Ms. Johnson has been employed by NARA, and in her current position, since June 2005. Her first-level supervisor is Erica Pearson and her second-level supervisor is David Ferriero.

Ms. Johnson has never met Complainant. She states that, prior to his Complaint, her only contact with Complainant was when he included her on an email dated January 6, 2020, *"when*

---

[18] Vacancy Announcement No. 20-NARA-13 and 20-NARA-29
[19] Vacancy Announcement No. 20-NARA-176
[20] Pursuant to Complainant's testimony, he did not apply for this position.



*he inquired about a Schedule A Applicant Process for EEO Specialist/20-NARA-29."* Ms. Johnson further states that she does is not aware of Complainant's age or disability.

Ms. Johnson was involved in the selection process for the EEO Specialist positions advertised under Vacancy Announcement No. 20-NARA-13 and 20-NARA-29 to the extent that she conducted interviews. Specifically, Ms. Johnson,

> *interviewed candidates via phone and in person for the GS-9 EEO Counselor's position under VA[21] No. 20-NARA-13 and the GS-11 EEO Specialist position under 20-NARA-29 in December 2019.*

Ms. Johnson also served on the interview panel for the GS-13 position under VA No. 20-NARA-176. Ms. Johnson states that she was not involved in recruitment for any of the positions as *"recruitment is HR's role."* Ms. Johnson states that no one was selected for the GS-9 and GS-11 positions and the vacancy announcements were cancelled.

Ms. Johnson denies that she interfered, intimidated, or retaliated against Complainant. She states that, other than the email communication referred to above, she had no communication with him and that she does not know him. She is aware that he applied for the GS-9 and GS-11 positions but that she is not aware of the method that Complainant used to apply for the positions or when he applied for the positions. Ms. Johnson also states that although Complainant's name was on the Certificate for the GS-11 position, he did not rank high enough to be interviewed.[22] Complainant was not on the Certificate for the GS-9 position and therefore was also not interviewed for that position.[23]

**Ms. Emily Stephenson** (Tab F-4, Page 142)

**Ms. Emily Stephenson** (RMO: DOB: July 1975) was a Supervisor Attorney-Advisor (EEO Complaints Manager) at the Consumer Financial Protection Bureau ("CFPB") when the incidents of this complaint occurred. Her first-level supervisor is Melissa Brand, Director of the Office of Civil Rights and her second-level supervisor is Althea Kireilis, Associate Director of Office of Equal Opportunity and Fairness ("OEOF").

Ms. Stephenson has never met Complainant. She states that after her office agreed to investigate a complaint he filed against NARA, she communicated with Complainant by email. Ms. Stephenson reports that while she does not recall Complainant's exact age she knows that he is over 40 because she reviewed his formal complaint which included a claim of age discrimination. She was aware that Complainant had a disability because his complaint also included a claim of disability discrimination.

Ms. Stephenson states that she does not have any personal knowledge regarding Complainant's initial claim against NARA.

---

[21] Vacancy Announcement

[22] This testimony differs from the testimony of Christopher Ferree who states that Complainant was referred as non-competitive for both positions.

[23] Pursuant to Christopher Ferree, Complainant was included on the GS-9 non-competitive Certificate. *See* Tab F-11.

Ms. Stephenson denies Complainant's multi-part amended claim regarding CFPB's investigation of his initial claim.

Ms. Stephenson denies that CFPB improperly reviewed management's affidavits. Ms. Stephenson explains that during CFPB's investigation process, the Investigator would initially review an Affidavit and make notes regarding any needed follow-up.

> We assign a case manager to every investigation. The case manager is an attorney (who is _not_ an agency representative) in our office who conducts very limited reviews of affidavits – for example to review whether an Affiant wholly failed to respond to a question.[24] When that happens, the affidavit is returned to the Affiant, along with a request that they provide an answer of Yes/No, etc. We do not edit, revise or influence in any way, the substantive testimony of any Affiant. However, here, OCR staff reviewed no affidavits.

She further states,

> We did not improperly review any affidavits. I recall that two management officials were asked for affidavits (written interrogatories) but by June 1st, we had not received their Affidavits, and accordingly had not reviewed them at all.
>
> I believe we had not received a completed affidavit from any manager until after we were conflicted out of the processing of Mr. Allen's investigation of his formal complaint against NARA, on June 17, 2020 because he raised a spin-off claim against NARA based on the way CFPB was investigating his complaint. I believe we received an affidavit from one manager on June 18th, which was not reviewed by OCR staff as our work on his case had ceased by that point.

She further states that,

> At no point in this process does the investigator or case manager make any substantive edits to the testimony, nor influence an affiant's testimony in any way.

Ms. Stephenson adds that this process of limited review of Affidavits has been

---

[24] Ms. Stephenson addressed this issue directly with Complainant in an email dated June 15, 2020 in which she states, "Good afternoon Mr. Allen, Thank you for copying me on your email to Ms. Kennedy, so that I have this opportunity to reply. In addition to conducting the investigations of complaints, an attorney advisor in the Office of Civil Rights (OCR) reviews affidavits for legal sufficiency and thoroughness. This includes making sure all questions are answered and identifying any needed clarification or follow up questions. We in no way attempt to alter or influence the testimony of any witness, to include yourself." (Tab F-14, Page 709)

Summary Page 12

reviewed and approved by the Office of the Inspector General.

Ms. Stephenson denies that CFPB advised management on how to respond to the (prior) Investigator's Interrogatories. She states, *"We would never advise management on how to respond to the investigator's interrogatories and did not do so in this case."*

Ms. Stephenson denies that CFPB refused to respond and advised the contractor investigator to not respond to Complainant regarding reasonable questions about the investigation. She states that she personally, along with the case manager, Rachel Decter, and the (then) Investigator, Bettie Kennedy *"all responded many times, and often at length, to his numerous questions."* She further states that,

> *I advised her [Ms. Kennedy] that I would be happy to respond to his questions on one or two occasions on procedural matters. I offered to respond in lieu of the investigator responding.*

Regarding Complainant's allegation that CFPB violated HIPPA and the Privacy Act by discussing Complainant's private medical information and the details of his EEO complaint with unauthorized individuals, Ms. Stephenson states,

> *I have no knowledge of the details and information to which Complainant is referring, and I have no knowledge of who the individuals were whom he describes as "unauthorized." I don't believe that we violated HIPPA or the Privacy Act in any way. I also don't have a recollection of discussing his private medical information with anyone.*

Ms. Stephenson denies that CFPB changed the investigator in the middle of the investigation so that the second investigator and her law firm would have the ability to secretly advise CFPB OCR and NARA EEO and HR employees during the investigation. She further states,

> *The reason the initial investigator, Bettie Kennedy was removed from the case by Pam Bethel, was that Bettie had to go on leave for personal reasons. At that point, we informed Complainant that, starting June 17th, Pam Bethel would take over and conclude the investigation[25]. Pam Bethel was already overseeing Bettie Kennedy's investigation from the beginning of the investigation, so she was already privy to the claims and facts that had been developed in the case.*
>
> *I am not aware of the new investigator, who is an attorney, (and I am assuming he means Pam Bethel) secretly advising CFPB OCR and NARA EEO and HR employees of anything.*

---

[25] *See* Investigator Memorandum. (Tab G-2, Attachment B, Page 825)

denied an opportunity and denied equal access for the positions are that despite being *"extremely qualified"* for the positions,

> *EEO Director Pearson and/or someone on her staff, was aware that I had a disability and that I was older based on the information in my application package*

and that

> *Director Pearson, her staff, and HR manipulated the hiring process to circumvent having to consider and/or hire me because they did not want to hire an applicant with a disability(ies) or who was older.*

Complainant further avers that he should have been considered for a GS-13 EEOS position for which he did not apply. He again claims that he believes that NARA did not want to hire an older applicant and/or an applicant with a disability.

In sum, the testimony of the NARA employees[10] in response to Complainant's allegations is that:

1. Complainant was referred as a non-competitive candidate for the GS-9 and GS-11 positions, and that his non-competitive status could have been the result of Complainant being a Schedule A candidate or a Veteran Recruitment Appointment (VRA).
2. No one in the hiring process is required to consider the non-competitive referrals.
3. Complainant did not score high enough to be considered as a competitive candidate.
4. Although Complainant, as a Schedule A applicant, could have been considered for the GS-13 position even though he did not apply, the Agency had no requirement to seek out a Schedule A candidate.

Complainant alleges that CFPB retaliated against him during the investigation of the aforementioned discrimination and retaliation claims. Emily Stephenson[11] (CFPB) denies that Complainant was retaliated against. She states,

> *Our office is a neutral party in the investigation of formal complaints of discrimination…We processed this case for NARA to assist them since they were conflicted out of doing so themselves…Further, we acted wholly appropriately, and neutrally while investigating Mr. Allen's complaint. We also were not motivated by retaliatory animus as to any action we took relative to Mr. Allen's investigation.*

## V.    ISSUES ACCEPTED

The Agency accepted the following issues for investigation:

**Accepted Issues:** (Tab C, Page 53)

---

[10] *See* Affidavits of Erica Pearson, Tammie Johnson and Christopher Ferree. (Tab F-2, F-3, F-5)
[11] *See* Tab F-4.

10

000005

1. Whether NARA violated the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §633a, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794(f), as amended, by subjecting Complainant[12] to disparate treatment based on his age (YOB: 1963), disability ("Schedule A"), and/or by retaliating against him for engaging in prior protected EEO activity when, on January 7, 2020, he learned he was denied equal access during the recruitment and selection process for three EEO Specialist positions, (GS9 under Vacancy Announcement No. 20-NARA-13, GS 11 under Vacancy Announcement No. 20-NARA-29 and GS13 (unknown Vacancy Announcement No.) which resulted in his nonselection for the positions.

2. Whether on June 1, 2020, the complainant was subjected to retaliation when officials in the Office of Civil Rights, Consumer Financial Protection Bureau (CFPB):
   a. Improperly reviewed management's affidavits;
   b. Advised management on how to respond to the investigator's interrogatories;
   c. Refused to respond and advised the contract investigator not to respond to him regarding reasonable questions about the investigation;
   d. Violated HIPPA and the Privacy Act by discussing his private medical information and the details of his EEO complaint with unauthorized individuals;
   e. Changed the investigator in the middle of the investigation so the new investigator, who is an attorney, and her law firm has the ability to secretly advise CFPB OCR and NARA EEO and HR employees during the investigation; and
   f. Improperly shared details of the investigation with NARA's Responsible Management Officials (RMOs) prior to the completion of the investigation.

## VI.    SUMMARY OF EVIDENCE:

**Complainant's Testimony**[13] (Tab F-1, Page 89)

**The Complainant,** Caulton Allen (Disabled; DOB May 1963), states that he was denied an opportunity for several EEOS positions based on discrimination related to his disability (Schedule A) and age (>40).

Complainant states that his disabilities are that he is Diabetes-Insulin Dependent and that he has Depression/Anxiety Disorder. He was diagnosed with the former in 2009 and with the latter in 2007. Complainant states that both disabilities have been diagnosed as permanent. He further states that although the Agency may not have been aware of his specific disabilities, *"they were aware that I had a Schedule "A" disability based on the materials in my application package..."*

Complainant avers that his claim of discrimination is not based on non-selection but rather the denial of an opportunity and/or the failure to be considered for the GS-9, 11, and 13 positions.

---

[12] Pursuant to a request by Complainant, his name has been substituted for "Complainant."
[13] This Affidavit was drafted (and partially executed by Complainant) prior to Investigator Ryan's involvement in this matter. Complainant has failed to respond to all attempts (email, regular mail, and telephone) made by Investigator Ryan to communicate with Complainant regarding his Complaint and Amended Complaint. As Complainant's Affidavit was completed prior to the addition of the CFPB claim, there is no testimony regarding same included herein. *See also* Investigator Memorandum. (Tab G-2)

11

000006

He further states that the non-selection was a consequence of being denied the opportunity and/or the failure to be considered for the positions.

Complainant's allegation regarding retaliation is that it is not retaliation for any prior EEO/protected activity but rather it is based on the Agency's

> *EEO employees efforts to interfere with my ability to obtain information regarding a program, Schedule "A" that would have allowed me to be considered and potentially appointed under a non-competitive hiring authority based on having targeted disabilities and their efforts to intimidate and retaliate against me after I filed an informal EEO complaint because I sought information and consideration for an appointment as a qualified individual with a disability.*

Complainant avers that, based on his qualifications and experience, he should have been rated and ranked high enough to be selected for an interview and/or consideration for a direct hire under Schedule A or as a 30% or more disabled veteran. He further states that Schedule A is *"meant to specifically assist qualified disabled applicants to obtain employment"* but that his application *"was not given the same consideration as those of non-disabled applicants."* Complainant states that he was not informed as to whether he was on the best qualified list for the GS-9 or GS-11 positions but that he was informed that he was referred to the hiring manager for both positions. Without being interviewed, he subsequently learned that he was not selected for either position.

After applying for the GS-9 and GS-11 positions, Complainant contacted the Agency on multiple occasions. He states that in his communications he, A) inquired whether the agency had a process in place for consideration of Schedule A applicants, B) advised that he requested to be considered as a Schedule A applicant, C) requested information regarding the recruitment and selection process for the GS-9 and GS-11 positions, D) inquired whether he had been considered under Schedule A, E) requested information consistent with the notice that the federal hiring process is setup to be fair and transparent, and F) inquired as to the Agency's failure to provide EEO Counseling. Complainant states that he did not receive substantive responses to his communication attempts.[14]

Complainant states that when he learned of the GS-13 EEOS position he contacted the Agency to inquire if he was considered for the position *"under the Schedule "A" non-competitive authority"* for the position. He states that he did not receive a response to this inquiry.

---

[14] Complainant did not respond to Investigator Ryan's request for any documents. Communications between Complainant and NARA and between Complainant and CFPB have been included herein to the extent they have been provided by the Agencies. In communicating with NARA staff, Investigator Ryan learned that Complainant did not receive a response to his inquiry regarding being referred as a Schedule A applicant. *See* Investigator Memorandum. (G-2, Attachment D)

Summary Page 7

Complainant states that he believes he was discriminated and retaliated against because he is qualified for all three jobs and that he believes that the Agency does not want to hire an applicant that is older and/or has a disability. He further states,

> *EEO Director Pearson and her staff more than likely wanted to hire a non-disabled and younger candidate, but knew that it would be difficult to explain why I was not interviewed because I was very qualified for the GS-9, 11, and 13 EEOS positions based on the many years of EEO experience and qualifications noted in my resume, as well as my eligibility for a non-competitive appointment as a Schedule "A" and 30% or more disabled veteran.*

Complainant further states that the Agency,

> *orchestrated a plan designed to intimidate and retaliate against me so I could not obtain any information regarding whether I was appropriately considered under Schedule "A" or as a 30% or more disabled veteran for the GS-9, 11, and 13 EEOS positions.*

Complainant states that the Agency interfered, tried to intimidate, retaliated against him by:

(1) *Refusing to identify a POC/SPPC[15] for the Agency's Schedule "A" program,*
(2) *Refusing to provide me with any information consistent with the vacancy notice that the federal hiring process is fair and transparent,*
(3) *Refusing to provide me any information regarding whether I was considered under Schedule "A",*
(4) *Assigning an Agency EEO staff member, Helena Lawson[16], to conduct intake on a complaint of discrimination that materially involved her (Pearson and her staff),*
(5) *And refusing to provide EEO Counseling as required by Agency and EEOC policy and regulations.*

In support of his claims, Complainant states that he only has circumstantial evidence *"based on my knowledge of what I believe took place during the recruitment and selection process."* He states that he does not have any direct evidence because the Agency *"refused"* to conduct EEO Counseling, and therefore, he could not review documents related to the recruitment and selection process.

Complainant is seeking the following relief:

- Appointment to a position comparable to the GS-0260-9, 11, or 13 EEO Specialist positions at issue in Complainant's complaint;

---

[15] Point of Contact/Special Placement Program Coordinator
[16] Pursuant to Tab F-15, Helena Lawson is an EEO Assistant reporting to Erica Pearson, EEO Director.

13

000008

- Back pay and benefits;
- Attorney fees;
- Damages; or
- A financial settlement;
- Notification in all future Agency vacancy announcements that includes verbiage explaining how disabled applicants can apply under Schedule A through the Agency's internal policy outside USA jobs, including identifying the name of appoint of contact ("POC")/Special Placement Program Coordinator ("SPPC") and information that includes the POC/SPPC's email address and telephone number where they can be contacted for information;
- Notification in all future Agency vacancy announcements that includes verbiage explaining the differences in requesting consideration as Schedule A applicant based on status in the vacancy announcement and requesting consideration through the Agency's internal policy outside USA jobs. The notification should also include information identifying the name of a point of contact ("POC")/Special Placement Program Coordinator ("SPPC") and information, that includes the POC/SPPC's email address and telephone number where they can be contacted for information.

Complainant did not provide any rebuttal testimony.

**Testimony of Responsible Management Officials**

**Ms. Erica Pearson** (Tab F-2, Page 118)

**Ms. Erica Pearson**, (RMO: May 1982) was the EEO Director, GS-0260-15, when the initial incidents of this complaint occurred. Ms. Pearson has been employed by NARA since October 2018. She began in her current position, as the Acting Director, in February 2019. Her first-level supervisor is David Ferriero; she does not have a second-level supervisor.

Ms. Pearson has never met Complainant. She states that her first contact with him was an email he sent on January 6, 2020 when he inquired about the Schedule A process. Ms. Pearson further states that she is not aware of Complainant's age or disability.

Ms. Pearson was involved in the selection process for the EEO Specialist positions advertised under Vacancy Announcement No. 20-NARA-13 and 20-NARA-29 to the extent that she was the selecting official for the positions. Ms. Pearson identifies the third vacancy referenced by Complainant in his complaint as Vacancy Announcement No. 20-NARA-176[17]. For this position, Ms. Pearson was both on the interview panel and the selecting official.

Ms. Pearson states that she did not deny Complainant equal access to the recruitment and selection process to any of the three (3) vacancies. She further states,

> *No, I had no interaction with him during the recruitment or selection process. My knowledge of the complainant began on January 6, 2020 when he emailed my office. No interference, intimidation nor*

---

[17] Complainant identified this position only as GS13 (unknown Vacancy Announcement No.).

14

000009

## VI.    DESCRIPTION OF EXHIBITS

### Index

**TAB A**    Formal EEO Complaint, dated February 14, 2020 (Page 20) *[NARA]*

**TAB B**    Explanation regarding why counseling was not provided dated March 19, 2020 (Page 24) *[NARA]*
   - Agency email communication regarding attempts for counseling (Page 26) *[NARA]*

**TAB C**    Agency Notices/Letters (Page 53) *[NARA[28]]*
   - Acceptance of Claim dated March 10, 2020 (Page 54)
   - Acceptance of Amended Claim dated September 11, 2020 (Page 58)
   - Notification of Investigation to Erica Pearson dated May 8, 2020 (Page 60)
   - Notification of Investigation to Tammie Johnson dated May 21, 2020 (Page 72)
   - 90-Day Extension Letter dated August 14, 2020 (Page 84)

**TAB D**    Attempts at Resolution (No Documents Generated) (Page 85)

**TAB E**    Appellant Activity (Not Applicable) (Page 87)

**TAB F-1**    Complainant's Affidavit, partially executed (Page 89) *[Affiant][29]*

**TAB F-2**    Affidavit of Erica Pearson, RMO, signed and dated October 5, 2020 (Page 118) *[Affiant]*

**TAB F-3**    Affidavit of Tammie Johnson, RMO, signed and dated June 15, 2020, (Page 130) *[Affiant]*

**TAB F-4**    Affidavit of Emily Stephenson, RMO, signed and dated October 20, 2020, (Page 142) *[Affiant]*

**TAB F-5**    Affidavit of Christopher Ferree, signed and dated October 15, 2020 (Page 155) *[Affiant]*

**Tab F-6**    Position Descriptions[30]  (Page 165) *[NARA]*
20-NARA-13 (Page 166)
20-NARA-29 (Page 180)
20-NARA-176 (Page 194)

---

[28] Even though some correspondence is drafted by CFPB, it was provided to Investigator Ryan by NARA.

[29] As Complainant did not participate in the investigation with Investigator Ryan, this Affidavit was provided to Investigator Ryan by NARA.

[30] Pursuant to the Agency, the position descriptions for 20-NARA-13 and 20-NARA-29 are the same. *See* Investigator Memorandum (Tab G-2)

15

000017

**TAB F-7**    Vacancy Announcements (Page 195) *[NARA]*
           20-NARA-13 (Page 196)
           20-NARA-29 (Page 203)
           20-NARA-176 (Page 211)

**Tab F-8**    Complainant's Application Packages (Page 218) *[NARA]*
           20-NARA-13 (Page 219)
           20-NARA-29 (Page 236)

**Tab F-9**    Complainant's Referral Letters (Page 251) *[NARA]*
           20-NARA-13 (Page 252)
           20-NARA-29 (Page 253)

**TAB F-10**   Interviewees' application materials (Page 254) *[NARA]*
           20-NARA-13 (Page 255)
           20-NARA-29 (Page 316)
           20-NARA-176  (Page 327)

**TAB F-11**   Certificate of Eligibles (Page 442) *[NARA]*
           20-NARA-13 (Page 443)
           20-NARA-29 (Page 446)
           20-NARA-176  (Page 448)

**TAB F-12**   Interview Notes (Page 450) *[NARA]*
           20-NARA-13 (Page 451)
           20-NARA-29 (Page 489)
           20-NARA-176 (Page 565)

**TAB F-13**   Internal agency (NARA) correspondence regarding Complainant (Page 611)
           *[NARA]*

**TAB F-14**   NARA and CFPB correspondence with Complainant regarding the processing of
           his complaint[31] (Page 620) *[NARA]*

**TAB F-15**   Organizational Chart (Page 750) *[NARA]*

**TAB F-16**   EEO Policy Statement dated August 4, 2020 (Page 752) *[NARA]*

**TAB F-17**   NARA 315, Merit Promotion and Internal Placement dated June 10, 2019 (Page
           755) *[NARA]*

**TAB F-18**   NARA 396, Anti-Harassment Policy dated August 27, 2013 (Page 786) *[NARA]*

**TAB G-1**    Letters of Authority to Investigate (Page 813) *[NARA]*
           Dated September 10, 2020 (Page 814)

---

[31] The nature of these communications, many of them email exchanges with repetitive threads and to multiple individuals made it difficult to specifically enumerate each correspondence.

16

000018