# Exhibit B

17

# National Archives and Records Administration

---

## Transmittal Memo

---

DATE: June 10, 2019

TO: All NARA Employees

**SUBJECT: NARA 315, Merit Promotion and Internal Placement**

**Purpose**: This directive updates NARA policies and procedures for filling positions with an individual who is currently an employee of NARA or another Federal agency, or is authorized to compete with Federal employees, through a competitive hiring or promotion action ("merit promotion"). This directive also covers reassignments, details, and voluntary changes to lower grade ("internal placement").

**Background/Significant changes:** Based on comments received during the review period, new language has been added articulating whistleblower protections for candidates for hiring and promotion actions covered by this directive. This version also clarifies that non-selection for a position or promotion may be grieved only if the applicant alleges discrimination.

The May 13, 2019 version of this directive incorporated changes resulting from the migration of human capital services to the Department of Treasury, Administrative Resource Center (ARC) and made additional changes implementing the Collective Bargaining Agreement between NARA and the American Federation of Government Employees (AFGE) Council 260, dated February 7, 2019.

The May 13, 2019 version also included the following significant changes from the November 3, 2011 version:

- Applicants with foreign education must include their equivalency documentation at the time of application and applicants must meet time-after-competitive appointment requirements and selective placement factors when the vacancy announcement closes;
- Certificates of eligible will be issued for 15 calendar days, with up to two 7-day extensions, for a total of 29 days, and certificates will remain open for other selections for 60 days;
- When interviewing more than 10 bargaining unit employees, the selecting official may use a selection panel instead of interviewing all bargaining unit applicants;
- ARC will automatically set pay for candidates with prior Federal civilian service at the highest rate of pay previously paid;
- When Management directs the reassignment of an employee, the employee will be provided at least 45 days of notice (30 days informal, 15 days formal);
- Procedures for requesting a voluntary reassignments and voluntary change to lower grade are clarified.

18

000756

## National Archives and Records Administration

**Available forms:** NA Form 3066, Justification to Exclude from Interview

**Canceled forms:** None.

**Canceled policy:** NARA 315, Merit Promotion and Internal Placement, dated May 13, 2019.

**Effective date:** This directive is effective on the date of signature.

**Contact information:** For question about this directive, please contact Landon Carter at 301-512-1617 or landon.carter@nara.gov.

DEBRA STEIDEL WALL
Deputy Archivist of the United States

Attachment

19

000757

# National Archives and Records Administration

**NARA 315**
June 10, 2019

**SUBJECT: Merit Promotion and Internal Placement**

PART 1 – GENERAL

**315.1     Policy.**

a.     This directive establishes NARA policies and procedures for selecting, hiring, and promoting individuals through the merit promotion process. This directive also establishes policies and procedures for reassigning and detailing employees and for implementing employee requests for voluntary change to lower grade. This directive does not apply to filling positions through public notice (delegated examining) procedures or any other appointing authority.

b.     The competitive procedures outlined in this directive ensure that selections are made from among the best qualified candidates using merit-based, objective, job-related criteria. All selections must be made based solely on job-related criteria and without regard to political, religious, or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, sexual orientation, gender identity, genetic information, non-disqualifying physical disability, or age.

c.     Merit promotion hiring is only one of many mechanisms available for filling a vacant position. Supervisors may also consider filling positions through a public announcement (delegated examining unit) or by one of several non-competitive procedures, including:

(1)     Reassigning a current NARA employee;

(2)     Providing a detail or temporary promotion of a current NARA employee;

(3)     Voluntary change to lower grade of a current NARA employee;

(4)     Non-competitive transfer of a current Federal employee (or reinstatement of a former Federal employee), on a career or career-conditional appointment, who currently or previously held that grade or promotion potential; and

(5)     Using a special appointment authority, such as Veterans Recruitment Authority (VRA), 30% or more Disabled Veterans Program, or Schedule A (Persons with Severe Disabilities).

20

000758

**315.2**      **Scope and applicability.**

a.      The requirements and procedures outlined in this directive apply to filling competitive service positions in the General Schedule (GS), the Federal Wage System (WG, WS), and Senior Level (SL) positions (except for Presidential Library Directors) with candidates who are:

(1)      Current or former Federal employees who have career or career conditional status;

(2)      Applicants eligible under the Veterans Employment Opportunity Act (VEOA);

(3)      Veterans Recruitment Authority (VRA) appointees, who serve on excepted appointments and, upon meeting service and performance requirements, may be converted to the competitive service; and

(4)      Other applicants authorized by law or government-wide regulations to compete under agency competitive merit promotion procedures.

b.      For positions in the bargaining unit, these procedures apply to the extent that they are consistent with the NARA-AFGE Collective Bargaining Agreement.

c.      These procedures do not apply to Senior Executive Service (SES) and excepted service positions, to include Presidential Library Directors and the Director of the National Historical Publications and Records Commission (NHPRC).

**315.3**      **Responsibilities.**

a.      The Chief Human Capital Officer (CHCO), through and in collaboration with, the human resources shared services provider, the Department of the Treasury, Bureau of the Fiscal Service, Administrative Resource Center (ARC):

(1)      Administers Merit Promotion policy and procedures to ensure fair and equitable treatment of all applicants for all positions;

(2)      Provides technical assistance and guidance to managers, supervisors, employees, and applicants on all merit promotion matters;

(3)      Classifies position descriptions developed by managers and supervisors;

(4)      Assists selecting officials in determining the area of consideration that will provide a diverse group of highly qualified applicants;

(5)      Maintains liaison with OPM on merit promotion policy and related activities;

21

000759

    (6)    Advises managers and supervisors on the pre-recruitment process, including developing the job analysis, evaluation criteria, and, if appropriate, selective factor(s); and

    (7)    Develops and posts vacancy announcements, receives applications, determines applicant eligibility, evaluates applicants, issues certificate(s) of eligibles, extends job offers, notifies applicants of the status of their applications, ensures initial suitability is completed, enters data into human resources information systems, and maintains vacancy files.

b.    Managers and supervisors:

    (1)    Apply the principles and requirements of this directive when filling a position, including merit system principles and the principles of equal employment opportunity, and taking appropriate corrective action when violations of these principles and requirements occur;

    (2)    Initiate and submit requests for recruitment actions to ARC in a timely manner;

    (3)    Develop position descriptions and consult with ARC on organizational charts;

    (4)    Consult with ARC to complete the pre-recruitment process;

    (5)    Consult with ARC to identify recruitment strategies likely to yield a diverse pool of highly qualified applicants;

    (6)    Make selection decisions within established time-to-hire timeframes; and

    (7)    Promptly release employees selected for other positions. If an employee is receiving a promotion, the employee may be held for up to one full pay period. If the employee is selected for a lateral reassignment or transfer, the employee may be held for up to two full pay periods.

**315.4**    **Actions which require competition.**

The following actions require competition:

a.    All promotions, except for those listed in paragraph 315.5, below.

b.    Temporary or time-limited promotions more than 120 calendar days to a higher graded position (prior service during the preceding 12 months under non-competitive, time limited promotions and non-competitive details to higher graded positions counts towards the 120-calendar day total).

22

000760

(1)    A temporary promotion may be made permanent without further competition if the temporary promotion was originally made under competitive procedures and a statement was included in the vacancy announcement notifying all potential candidates that it might lead to a permanent promotion.

(2)    Time-limited promotions made under competitive procedures may be extended up to five years. Extensions beyond five years must be approved by OPM.

c.    Details to a higher-grade position or to a position with higher promotion potential for more than 120 calendar days (prior service during the preceding 12 months under non-competitive, time-limited promotions and non-competitive details to higher graded positions count toward the 120 calendar day total).

d.    Selection for training which is part of an authorized training agreement, part of a promotion program, or required before an employee may be considered for promotion.

e.    Reassignment or change to a lower graded position that has greater promotion potential than any position the employee has previously held on a permanent basis in the competitive service (except as permitted by reduction-in-force regulations, if applicable).

f.    Transfer to a position at a higher grade or with greater promotion potential than any position the employee has previously held on a permanent basis in the competitive service.

g.    Reinstatement to a permanent or temporary position at a higher grade or with greater promotion potential than any position the employee has previously held on a permanent basis in the competitive service.

**315.5    Actions that do not require competition.**

The following actions do not require competition:

a    A promotion, reassignment, change to lower grade, transfer, reinstatement or detail from one position to another having no higher promotion potential than that of the position the employee currently holds or previously held on a permanent basis in the competitive service and did not lose for performance or conduct reasons.

b.    A promotion to a grade previously held on a permanent basis in the competitive service, from which an employee was not separated or demoted for performance or conduct reasons.

c.    A promotion when an employee was hired, under competitive promotion procedures, into a career ladder position below the full performance level.

23

000761

(1)    A career-ladder promotion may be made without further competition only if the promotion potential (full performance level) was identified when the position was established and was documented on the vacancy announcement.

(2)    Employees are not guaranteed promotion once selected for positions within an established career ladder. An employee is eligible for a career-ladder promotion only when she or he has:

   i.    Met legal and regulatory requirements (i.e. time-in-grade restrictions);

   ii.    Demonstrated experience necessary to meet all eligibility requirements, including eligibility requirements established by a specific organizational unit or for a specific job series or position;

   iii    Demonstrated the ability to perform at the next higher grade level; and

   iv.    Received a current rating of record of "Fully Successful" (level 3) or higher.

(3)    An employee who is otherwise eligible for a career ladder promotion must be certified by their immediate supervisor as capable of satisfactorily performing at the next higher level. The employee will be promoted on the first pay period after certification takes place and the action has been approved by the Servicing Personnel Office (SPO).

(4)    Promotions above the full performance level must be made under competitive promotion procedures.

d.    A career-ladder promotion on or after non-competitive conversion of a Pathways employee, Veterans' Recruitment Appointment (VRA) appointee, Schedule A (Person with Severe Disabilities), Presidential Management Fellow, or another authorized program, provided the full performance level of the position was identified upon initial hire for Pathways recent graduates and VRA appointments, or prior to conversion for Pathways interns and Presidential Management Fellows.

e.    A promotion from a trainee position when the employee was selected for the target position and grade level under competitive procedures.

f.    A temporary promotion or detail to a higher grade of 120 calendar days or less (all details to higher grade positions and temporary promotions held during the preceding 12-month period are counted in the calculation of the 120 day total).

24

000762

Regarding Complainant's allegation that CFPB improperly shared details of the investigation with NARA's Responsible Management Officials (RMOs) prior to the completion of the investigation, Ms. Stephenson states,

> I do not believe this to be correct. I don't know what details or which RMOs he is referring to. We did not improperly share any information to anyone.

**Testimony of Other Witnesses**

**Mr. Christopher Ferree** (Tab F-5, Page 155)

**Mr. Christopher Ferree**, (DOB February 1974) was a Supervisory HR Specialist when the incidents of this complaint occurred. His current position is the same title and grade as the position he held at that time; however, his current position is in a different area. His first-level supervisor is Ellyn Branham, Manager and his second-level supervisor is Mike Cundiff, Director.

Mr. Ferree does not know Complainant, nor does he know Complainant's age or that Complainant identifies with a disability.

Regarding Schedule A applicants, Mr. Ferree explains,

> An individual can apply for a job as a Schedule A applicant if they have no other way to be referred for a position - as long as they are qualified for that position. They are doing so as a non-competitive applicant. They have to submit a letter showing they have a recognized disability and a resume showing they meet all qualifications/requirements.
>
> Being a Schedule Applicant allows a candidate to be referred non-competitively. They do not have to go through the rating process. If it is someone that is not a current federal employee, they are able to apply as though they are federal employee.
>
> There is no guarantee of interview or selection for a Schedule A applicant. There is no guarantee that the selecting official will even look at the non-competitive list.

Mr. Ferree states that Complainant was found to be qualified for both the GS-9 and GS-11 positions and that Complainant was referred as non-competitive. The non-competitive referral could be the result of Complainant being a Schedule A candidate or a Veteran Recruitment Appointment for being 30% or more disabled veteran.

However, regarding non-competitive referrals, Mr. Ferree states,

> No one in the process is required to look at those referrals. They can review the resumes or the other certificates. A lot of times it depends

25

000014

*on how many people are referred. For a competitive certificate there is usually a limit based on the Agency. There is no limit on a non-competitive certificate. They can pick or chose who they want to. For a competitive certificate there are rules.*

When questioned as to whether it was possible for Complainant to be considered for the GS-13 position, a position for which he did not apply, Mr. Ferree states that if Complainant was in the Schedule A database, a manager could look at the database and consider a candidate that did not apply but only *"if the manager chose to look at that list."*

Mr. Ferree states that after HR refers candidates, it is up to hiring manager to determine which candidates are interviewed. He does not know the reason(s) as to why Complainant was not selected to be interviewed for either position. Regarding scores, Mr. Ferree states,

> *Before we post a job announcement, we help the manager create a job analysis. A list of questions and answers with each one having points. As applicants answer questions, they are automatically scored. Then - some Agencies have a score cut off. Some Agencies only refer the top ten people. The Selecting Official determines which scores gets interviewed. Each Agency has to follow their Agency's requirements for interviewing.*

Regarding whether Agency employees can disclose information to candidates about recruitment and selection, Mr. Ferree states,

> *I guess it would depend on the employee. The only thing HR could discuss while the position is being considered or posted is when will the position open, when will the position close. We could tell the applicant about their package but we can't tell the applicant about anyone else. We would usually wait to effective date before answering if someone was selected for the position and even then we would only say whether there was a selection. We don't share information as to who was selected. Also, we can answer questions about how to apply.*

Mr. Ferree does not have any knowledge regarding Complainant's second claim involving CFPF.

**Survey of the Environment:**

Four individuals were interviewed for the GS-9 position. Three individuals were interviewed for the GS-11 position. Five individuals were interviewed for the GS-13 position. The Agency is unable to provide age and disability information as to these candidates.[26] However, a review of the applicants' documents revealed that at least three (3) of the applicants that were interviewed

---

[26] *See* Investigator Memorandum. (Tab G-2, Attachment F)

26

were over age forty[27] and at least two (2) of the applicants that were interviewed qualified as Schedule A. *See* Tab F-10, pages 371 (applicant born in 1961), 393 (Verification of Schedule A), 394 (applicant born in 1970), 403 (Schedule A Certification), and 404 (applicant born in 1976).

---

[27] Not all applicants produced documentation that included birth year and/or some birth year information previously redacted.

27

g.    A permanent promotion to a position held under temporary promotion when:

   (1)   The assignment was originally made under competitive procedures; and

   (2)   It was noted on the job announcement that it may lead to a permanent promotion.

h.    A promotion based on accretion of duties. An accretion of duties promotion is an exception to competitive procedures that is available only after an employee's position has been classified at a higher grade (based on an increase in complexity, scope, and effect) in response to a desk audit.

   (1)   The following conditions must be met before a promotion based on accretion of duties will be considered:

      i.     The major duties and basic functions of the current position will be absorbed into the new position;

      ii.    The current position will be abolished and no additional positions will be created;

      iii.   The new position must not have any further promotion potential beyond the new (accreted) grade level;

      iv.    The addition of higher-level duties and responsibilities must not result in the abolishment of another position, reduce the known promotion potential of another position, or adversely impact another occupied position;

      v.     The employee is the only employee who could have reasonably been assigned the work that is the basis of the accretion;

      vi.    The employee has been performing the duties that were classified at a higher level for a minimum of six months and is expected to continue performing those duties on a regular basis;

      vii.   No other employee(s) in the same organizational unit were performing similar duties prior to the addition of the new duties and responsibilities which precipitated a promotion based on accretion of duties; and

      viii.  The employee meets time-in-grade and qualification standards.

   (2)   The following actions will not be considered for a promotion based on an accretion of duties:

28

000763

    i.      Promotion from one-grade interval position to a two-grade interval position (e.g. GS-5/6/7 to GS-9/11);

    ii.     Promotion from one occupational series to another occupational series (e.g. GS-1421 to GS-1420).

    iii.    Movement to a vacant, higher level position;

    iv.    Promotion from an identical additional position within the same organization;

    v.     Promotion from a non-supervisory position to a supervisory position; and

    vi.    Accretion of duties across organizational lines.

i.     A promotion that results from upgrading a position, without significant change in the duties and responsibilities, due to issuance of a new classification standard or the correction of an initial classification error;

j.     A promotion of an applicant not given proper consideration in a competitive promotion action, an employee who was involuntarily demoted without personal cause or who is in grade retention status, or a well-qualified applicant who is entitled to special selection priority under paragraph 315.16c, below;

k.    Appointment of a Senior Executive Service (SES) appointee with competitive service reinstatement eligibility to any position for which she or he qualifies in the competitive service at any grade or salary level;

l.     A position change permitted by reduction-in-force regulations (see 5 C.F.R. Part 351); and

m.    Promotions directed by judges, arbitrators, the Federal Labor Relations Authority, or other appropriate authority.

29

000764

PART 2 – MERIT PROMOTION PROCEDURES AND PROCESSES

**315.6        Area of consideration.**

a.        Before a vacancy announcement is posted, the selecting official must work collaboratively with the assigned ARC Human Resources Specialist to determine the individuals that will be permitted to compete for a position. This is called the "area of consideration".

b.        The area of consideration must be sufficiently broad to ensure that a reasonable number of high-quality applicants apply, considering the nature and level of the position to be filled, merit principles, Equal Employment Opportunity (EEO) principles, applicable regulations, and requirements of the NARA-AFGE Collective Bargaining Agreement.

c.        The area of consideration must be identified in the vacancy announcement and may not be changed once the announcement is open. An individual who is not in the area of consideration and is not eligible for non-competitive or special hiring authority will not be considered.

d.        The minimum area of consideration for positions advertised under this plan is NARA-wide. A NARA-wide announcement limits applicants to:

(1)        Current NARA employees who hold or have previously held a permanent appointment in the competitive service; and

(2)        Current NARA employees are employed under or eligible for appointment under a special appointing authority such as the Veterans Recruitment Appointment, 30% or more Disabled Veterans, or Schedule A (Persons with Severe Disabilities).

e.        The selecting official may expand the area of consideration under merit promotion procedures by announcing the position government-wide. A government-wide announcement includes current NARA employees and Federal employees outside of the agency. A government-wide announcement accepts applications from:

(1)        Current Federal employees who hold or have previously held a permanent appointment in the competitive service;

(2)        Current Federal employees are employed under or eligible for appointment under a special appointing authority such as the Veterans Recruitment Appointment, 30% or more Disabled Veterans, or Schedule A (Persons with Severe Disabilities); and

(3)        Former Federal employees who are eligible for reinstatement and current Federal employees who are members of the excepted service and are

30

000765

authorized by law or government-wide regulations to compete under merit promotion procedures

**315.7          Vacancy announcements.**

a.     Vacancy announcements must be posted to the USAJOBS website when filling vacancies through the competitive procedures described in this directive.

   (1)     The Office of Human Capital will make job announcements available <u>on</u> NARA@Work and on www.archives.gov/careers.

   (2)     NARA supervisors are encouraged to distribute vacancy announcements to potential sources of applicants (e.g., colleges and universities, professional associations, diversity organizations).

b.     The minimum open period for a vacancy announcement is seven business days, not including weekends and Federal holidays, except that a vacancy announcement for a Senior Level (SL) position must be open for a minimum of 14 calendar days.

   (1)     Vacancy announcements will not open or close on a weekend or Federal holiday.

   (2)     The selecting official may choose a longer open period, depending on such factors as the nature of the position, the scope of recruitment, and previous experience in filling the same or similar positions.

   (3)     If a vacancy announcement has been posted and any substantive information (e.g. area of consideration, duty station, grade, full performance level) is later found to be in error or subsequently changed, the announcement must be re-posted for 7 workdays.

c.     Every vacancy announcement must include the following information:

   (1)     Announcement number, opening and closing dates, organization and geographic location of position.

   (2)     Area of consideration, including:

      i.     The agency's intent to accept applications from groups eligible under non-competitive hiring authorities;

      ii.     When the area of consideration is government-wide or All Sources, Veteran Employment Opportunities Act (VEOA) information, including documentation required for proof of eligibility; and

31

000766

**NARA 315**
June 10, 2019

iii.     Veterans Recruitment Appointment (VRA), 30% Disabled Veterans, or other special appointment authority statement.

(3)    Career Transition Assistance Plan (CTAP) Reemployment Priority List (RPL), and Interagency CTAP (ICTAP) information (if applicable), including documents required for proof of eligibility and the definition of "well qualified."

(4)    Information about the position, including:

    i.     Position title, series, grade(s), salary range, and full performance level of the position;

    ii.     Type of appointment (permanent, time-limited, excepted);

    iii.     Work schedule (full-time, part-time (number of hours), intermittent);

    iv.     If the position is in the bargaining unit, a statement that the position is in the AFGE bargaining unit;

    v.     Number of positions available and, if applicable, a statement indicating that more than one position may be filled (as applicable);

    vi.     A summary of the duties of the position; and

    vii.     Any additional condition of employment (e.g. shift work, frequent travel, physical exam, mobility agreement).

(5)    A summary of eligibility and qualification requirements, including:

    i.     Minimum qualification requirements including all selective placement factors (if applicable), applicable educational requirements, and any other factors which must be met in order to qualify for the position;

    ii.     For positions with a minimum education requirement or those allowing applicants to be determined as minimally qualified based on their education, a statement indicating the requirement to submit transcripts and, if from a foreign institution, it must be an accredited school; and

    iii.     A statement indicating qualification requirements must be met by 11:59 pm Eastern Time of the closing date of the vacancy announcement.

32

000767

(6)    Instructions on how to apply, including supporting documentation receipt requirements.

(7)    A summary of the evaluation criteria and method(s) to be used in ranking candidates, including:

    i.    A list of knowledge, skills, and abilities and/or competencies that will be used to evaluate the applicants; and

    ii.   Any assessment tools such as tests or writing samples.

(8)    Statements describing any additional conditions of employment, including:

    i.    A statement that new employees are subject to a one-year probationary period;

    ii.   For supervisory and managerial positions, a statement that the selectee must serve a supervisory or managerial probationary period, unless exempt based on previous completion of such probation;

    iii.  A statement indicating whether a drug test is required;

    iv.   Requirement to be a U.S. citizen or national statement;

    v.    Requirement to pass a background investigation statement;

    vi.   Telework statement, if the position is eligible; and

    vii.  A Selective Service statement requiring male applicants born after December 31, 1959, to certify that they have registered with the Selective Service System, or are exempt from having to do so under the Selective Service Law.

(9)    If relocation expenses, relocation bonus, recruitment bonus, or other incentive(s) are authorized in advance following the procedures in NARA 603, Payment of Relocation Expenses, or NARA 322, Pay and Leave Incentives, the vacancy announcement will include a statement that relocation expenses, relocation bonus, recruitment bonus, or other incentive(s) *m y* be paid; otherwise, the announcement will state that relocation expenses, relocation bonus, recruitment bonus, or other incentive(s) will not be paid.

33

000768

(10)     A benefits statement indicating that permanent employees are eligible to elect life and health insurance coverage and will be covered by a retirement system, and that employees will earn annual and sick leave.

(11)     Additional disclosures, including:

   i.     Privacy Act information;

   ii.    Reasonable accommodation statement; and

   iii.   EEO statement.

(12)     Contact information for questions about the vacancy, including mailing address, e-mail address, telephone number and Teletypewriter (TTY) relay service information.

**315.8     Application requirements.**

a.     Timely submission required. Applications, resumes, response to selective factors, CTAP/RPL/ICTAP documentation, Schedule A documentation, and DD-214s (if applicable) must be received in accordance with the instructions in the vacancy announcement by 11:59 pm Eastern Time on the closing date of the vacancy announcement in order to receive consideration. Failure by the applicant to submit required documentation will disqualify the applicant from consideration.

b.     Federal status. Applicants who are eligible to compete as merit applicants are required to submit a copy of a Notification of Personnel Action (SF-50) or equivalent, showing their current grade level and the full performance level or career ladder of their current or former Federal position, along with their career or career-conditional status (if applicable). If the applicant fails to provide a copy of an SF-50 at the time of application, the applicant will be removed from further consideration.

c.     Performance rating. All applicants are required to submit their most recently completed annual performance appraisal (dated within 18 months from the closing date of the vacancy announcement), which identifies the employee's official rating of record (must be at least "Fully Successful") and is signed by the supervisor, or a statement explaining why the performance appraisal is unavailable. If the applicant fails to provide a copy of the performance appraisal, or a statement advising why it is unavailable, the applicant will be removed from further consideration.

d.     Education requirement. Whenever there is a minimum education requirement, the applicant must submit a copy of her or his transcripts.

(1)     If there is a minimum education requirement and the applicant fails to provide a copy of her or his transcript, the applicant will be removed from further consideration. If the applicant is using a combination of education

000769

**NARA 315**
June 10, 2019

and experience to qualify and the applicant fails to provide a copy of her or his transcript, the applicant will be evaluated based solely on experience.

(2)     The applicant's original official transcript(s) must be received before a final job offer will be extended. If the applicant fails to provide a copy of her or his transcript(s) within the specified time period, a final job offer will not be made, and the applicant will be removed from further consideration.

(3)     The ARC Human Resources Specialist must verify that schools are accredited prior to making job offer(s) when using education to qualify applicants. Education completed in a foreign institution or university must be evaluated by an accredited organization to ensure that the foreign education is comparable to education received in accredited institutions in the United States. When applicable, applicants are required to submit their foreign education equivalency at the time of application. Applicants who do not submit their equivalency at the time of application will be evaluated based on the information provided. The applicant's foreign education equivalency must be received before a final job offer will be extended. If the applicant fails to provide a copy of the equivalency within the specified time period, a final job offer will not be made and the applicant will removed from further consideration.

e.     Career Transition Assistance Plan (CTAP) / Reemployment Priority List (RPL) / Inter-agency CTAP (ICTAP). Applicants claiming eligibility for CTAP/RPL/ICTAP must submit a copy of their RIF Notice or other equivalent agency notification, a copy of their current (or most recent) performance rating of record, and a copy of the Notifications of Personnel Action (SF50s) showing the full performance level or career ladder of their current or previous positions at the time of application. Applicants who do not provide this proof by 11:59 pm Eastern Time on the closing date will not be considered as CTAP/RPL/ICTAP eligible, but will be considered as typical applicants.

f.     Applicants with disabilities. Applicants with disabilities claiming non-competitive eligibility under Schedule A must submit proof of their disability at the time of application. Applicants who do not provide this proof by 11:59 pm Eastern Time on the closing date will not be considered as Schedule A eligible, but will be considered as a typical applicant. Acceptable proof of an individual's disability and work readiness is appropriate documentation issued by a licensed physician or other medical professional, a licensed vocational rehabilitation specialist, a licensed allied health professional, or any Federal agency or agency of a State, the District of Columbia, or a U.S. territory that issues or provides disability benefits.

g.     Veterans' preference. Applicants claiming eligibility for special veterans' appointment authorities, such as Veterans Employment Opportunity Act (VEOA) or the Veterans Recruitment Authority (VRA), must submit a copy of their DD-214s showing

35

000770

their type of discharge and other supportive documents (if applicable) at the time of application. Applicants who do not provide this proof by 11:59 pm Eastern Time on the closing date will not be considered as VEOA/VRA eligible, but will be considered as typical applicants.

h.    Military spouses. Military spouse applicants claiming eligibility under Executive Order 13473, dated September 28, 2008, authorizing the non-competitive appointment of certain military spouses to competitive service positions, must provide documentation supporting eligibility. The required documentation includes: a valid marriage certificate or other official document verifying marriage (or common law marriage); a copy of their spouse's DD-214; and either a copy of the military orders assigning the service member to a certain post (and authorizing the spouse) or a copy of documentation from either the Department of Veterans Affairs or the Department of Defense indicating the service member has a disability rating of 100% due to a service connected disability. This Executive Order applies to only three categories of military spouses:

(1)    Military spouses who are relocating with their service-member spouse as a result of permanent change of station (PCS) orders;

(2)    Spouses of service members who incurred a 100% disability because of the service member's active duty service; and

(3)    Spouses of service members killed while on active duty.

## 315.9    Determining eligibility of applicants.

Once a vacancy announcement closes, the ARC HR Specialist will assess all applicants to determine if the following requirements are met:

a.    Citizenship. Applicants must meet all U.S. citizenship requirements by 11:59 pm Eastern Time of the closing date of the vacancy announcement.

b.    Area of consideration. Applicants must be within the advertised area of consideration in order to be considered eligible for the position and have their application reviewed.

c.    Time in grade. Applicants who are current Federal employees must meet time-in-grade requirements within 30 calendar days after the closing date of the announcement.

d.    Time-after-competitive-appointment. Applicants who are recent appointees to the Federal service must serve in their position for a minimum of 90 calendar days before they are eligible for promotion, reassignment, or transfer to a higher grade, a different line of work, or a different geographical area. Applicants who are recent appointees must meet time-after-competitive appointment requirements by 11:59 pm Eastern Time of the closing date of the announcement.

36

000771

e.      Performance rating. Applicants must have a current rating of record of at least "Fully Successful".

f.      Qualification standards. Applicants must meet the minimum qualification requirements as prescribed by the OPM Operating Manual, "Qualification Standards for General Schedule Positions," and "Qualification Standards for Trades and Labor Occupations for Federal Wage System". Applicants will be considered minimally qualified if they meet all of the requirements within 30 calendar days after the closing date of the vacancy announcement.

g.      Selective placement factors. Applicants must meet any special qualification requirements used in conjunction with the OPM qualification standards when they are essential to successful performance in the position. Applicants will be considered minimally qualified if they meet all of the requirements by 11:59 pm Eastern Time of the closing date of the vacancy announcement. Selective factors are in addition to minimum qualification requirements.

h.      Selective Service. Male applicants born after December 31, 1959 must be registered with the Selective Service System unless they are exempt under 5 C.F.R. Part 300 Subpart G, Selective Service Law.

**315.10      Evaluating applicants.**

a.      General. The method(s) used to evaluate applicants must be identified in the vacancy announcement. The evaluation process assures that the selection is made from among those applicants rated best-qualified. Evaluations must be based on job-related requirements and applied fairly and consistently. Evaluation methods may include the use of crediting plans or rating guides, questionnaires, physical ability tests, and/or other assessment tools such as structured interviews and performance exercises.

b.      Job analysis. The ARC HR Specialist uses the standardized job analysis to identify the major duties and tasks of the position and the skills and competencies required to successfully perform those duties. Only those skills and competencies required upon entry may be assessed during the selection process.

c.      Assessment tools. The ARC HR Specialist will use the standardized applicant questionnaire for the position to be announced as the primary assessment tool. The assessment tool will be used to evaluate the candidate's background against the skills and competencies of the position to be filled. The selecting official or subject matter experts supporting the selecting official may develop additional assessment tools, such as a crediting plan or rating guide. The assessment tool(s) provide appropriate credit for experience, education, training, performance appraisals, awards, and other factors that show the candidate possesses the skills and competencies required for the position.

d.      Ranking candidates. The ARC HR Specialist uses the assessment tool(s) designated for the vacancy and the automated staffing system to review the application

37

000772

materials of each candidate who meets the minimum requirements. The ARC HR Specialist evaluates each application to assess the degree to which the applicant possesses the skills and competencies required by the position. Based on this review, the ARC HR Specialist assigns a point value for each evaluation criterion, and an overall rating for each applicant.

**315.11        Referring applicants.**

a        Competitive Applicants.

(1)        The ARC HR Specialist will refer applicants whose scores fall within a clear grouping of applicants with the highest scores, or a "natural break". The HR Specialist will refer up to 10 candidates in this manner and, if the vacancy announcement is for more than one position, the HR Specialist will refer an additional two applicants for each additional position.

(2)        Applicants will be listed in alphabetical order, without their scores. Veterans Employment Opportunities Act (VEOA) candidates must be listed on the same certificate as merit promotion candidates.

(3)        If the position is announced at more than one grade level or geographic location, a separate certificate will be issued for each grade level and geographic location advertised.

b.        Non-Competitive Applicants. Applicants eligible for non-competitive consideration will be identified on a referral certificate or list separate from the list of merit promotion applicants. Under a merit promotion announcement, the agency must consider eligible, qualified military spouses in the same manner as it considers other applicants who are eligible for non-competitive appointments (e.g., Peace Corps volunteers, 30% or more disabled veterans, VRA, Schedule A(u)). A complete list of non-competitive hiring authorities is available at 5 C.F.R. Part 315, Subpart F, Career or Career-Conditional Appointment under Special Authorities.

c.        Validity of certificates.

(1)        Certificates are initially issued for 15 calendar days.

(2)        A certificate may be extended for up to 7 calendar days, a maximum of two times, up to a total of 29 calendar days. The selecting official must request an extension from the ARC HR Specialist, who will forward the request to the Chief Human Capital Officer for approval.

(3)        If no selection is made within 60 calendar days, the certificate will be cancelled.

38

000773

(4)    If a selecting official is unable to make a selection from the certificate, she or he may request to re-advertise the position using a wider area of consideration. While a selecting official is not required to make a selection from a certificate, it is improper to return it unused in order to obtain another certificate at a later date. Selecting officials may request re-announcement only after documenting the reason(s) for not using a certificate and only if the selecting official expands the area of consideration. If the selecting official does not expand the area of consideration, she or he will be required to wait 90 calendar days before re-announcing the position.

d.    <u>Sharing certificates.</u> If a certificate is less than 60 calendar days old, based on issuance date, the certificate may be used to make a selection for another position with the same series, grade(s), and location without issuing a new, separate vacancy announcement. All aspects of the vacancies must be the same, including the title, series, grade(s), promotion potential, general job responsibilities, location, selective factors, competencies documented in the job analysis, and any evaluation or testing requirements stated in the original announcement.

**315.12    Applicant interviews.**

a.    General.

(1)    For positions that are in the bargaining unit, if the selecting official interviews any referred bargaining unit candidates then she or he must interview all referred bargaining unit employees, except where the selecting official uses a panel as described below.

i.    If more than ten bargaining unit candidates are referred on a certificate of eligibles, the selecting official may interview fewer than all referred bargaining unit employees if she or he establishes a panel of employees to review application packages and recommend a limited number of employees to interview.

ii.    The selecting official will provide the panel with objective criteria for limiting the number of employees interviewed and the panel will not include employees otherwise involved in the selection process.

(2)    Selecting officials are encouraged, but not required, to interview non-competitive referrals.

(3)    It is the selecting official's responsibility to coordinate interview arrangements.

39

b.    Preparation. Interviewers should prepare for the interview by conducting a thorough review of the job requirements in the position description and job analysis. Selecting officials must develop standard questions for each vacancy. The interview questions must be job related and based on the skills and competencies required for the position. Follow-up questions may be asked, based on responses to initial questions or to clarify relevant work experience and education identified on the candidate's resume.

c.    Scope of interviews. Interviews may be conducted in person, by telephone, or by videoconference. Interviews may be conducted by the selecting official, a designee, or a panel of individuals who are knowledgeable about the job and occupy positions at or above the grade level of the position to be filled. The selecting official may choose from the following interview options:

(1)    Conduct a full interview of all competitive candidates by asking all of the interview questions developed for the vacancy; or

(2)    Conduct a preliminary screening interview of all competitive candidates by asking a sub-set of the interview questions developed for the vacancy. Typically, a preliminary screening interview focuses on one or two critical skills or competencies that are the most important to successful performance in the position. Based on the results of the preliminary screening interviews, selecting officials typically identify a smaller group of candidates to undergo the full interview.

d.    Excluding candidates from the interview process. For non-bargaining unit positions or candidates, selecting officials who exclude a candidate from either of the interview options outlined previously must complete NA Form 3066, Justification to Exclude from Interview, documenting the reasons for their decision.

e.    Documentation. Selecting officials must retain documentation of the interview process, including interview notes the completed NA Form 3066 (if applicable). Selecting officials are not required to provide this information to the ARC HR Specialist. Interview records are subject to disclosure and review in third party proceedings and should be retained in accordance with the records management paragraph in this directive.

f.    Reasonable accommodation. Selecting officials or the ARC HR Specialist may receive requests for reasonable accommodation for the interview process from applicants with disabilities. Requests for reasonable accommodations should be responded to quickly. The NARA Disability Employment Program Manager should be contacted to assist with these provisions.

**315.13    Reference checks.**

a.    The selecting official is responsible for conducting reference checks prior to making a final selection. Reference checks provide an objective means of evaluating an

18

applicant's past job performance based on information collected from supervisors and others who have known and worked with the applicant.

b.      Reference checks are used primarily to verify the accuracy of information provided by applicants through their written application and interview. References are also used to predict the success of job applicants by comparing their experience to the skills and competencies required by the job.

c.      The selecting official should prepare a list of job-related questions in advance. She or he should write notes while completing the reference checks to compare to the information supplied by the applicant. The selecting official should retain her or his notes in the event they are required to provide information regarding the feedback received.

### 315.14      Applicant selection and notification procedures.

a.      As a general rule, provided there are no individuals on the certificate who are entitled to special selection priority consideration, the selecting official has the right to select any applicant referred or to not select any of the candidates. Each applicant referred must be given full consideration, and the selection must be based on job-related reasons. The selecting official may inform an applicant of her or his interest, but only the ARC HR Specialist can make a final commitment or job offer.

b.      Selecting officials should make every effort to make a selection within 15 calendar days of the date of the certificate issuance, unless an extension has been granted. Up to two 7-day extensions may be granted, not to exceed 29 calendar days total. Additional selections may be made from the referral list(s) as long as those selections occur before the expiration of the certificate(s). Certificates do not need to be extended if the selections are identified before the expiration date.

c.      The supervisors of the gaining and losing offices must agree on a release date. The ARC HR Specialist coordinates all release dates. An employee selected for promotion must be released within a full pay period, or a later date if agreed to by the employee and gaining agency. For a selection other than promotion, the employee must be released no more than two full pay periods from date of selection. Exceptions may be negotiated on a case-by-case basis between the gaining and losing agency.

d.      Setting pay. If the selected candidate has previous experience as a civilian in the Federal government, ARC will automatically use the highest rate of pay that the employee previously earned to set pay, based on regulation and documentation provided by the candidate (SF-50 showing the rate earned). This applies only to General Schedule (GS) and Federal Wage System (WG, WS) positions. The employee must have earned the salary on a full-time or part-time work schedule and on an appointment where the employee worked more than 90 continuous calendar days of service, and must satisfy other requirements.

41

e.    Applicant notification and inquiries.

(1)    All applicants are notified through the automated staffing system four times during the hiring process: (1) application received, (2) applicant eligible (or not), (3) application referred to the selecting official (or not), and (4) applicant selected (or not).

(2)    An employee who applied for a position but was not selected may request additional information on a vacancy announcement from the Office of Human Capital, at Labor.Relations@nara.gov, or the selecting official.

i.    Upon request to the Office of Human Capital, an employee who is determined to be ineligible for a vacancy announcement will be provided an explanation as to why she or he was not referred.

ii.    Upon request to the Office of Human Capital, an employee will be provided the following information for each vacancy applied for: whether the employee meets minimum qualification requirements, whether the employee was referred to the selecting official, and the name of the employee selected for the vacancy.

iii.    Upon request to the selecting official, an employee will be provided the following information: specific reason(s) why the employee was not selected, and what areas she or he can improve. The selecting official will also identify any training that may help the employee improve her or his chances of future promotion.

## 315.15    Complaints, grievances, and appeals.

a.    Non-selection for a promotion from among a group of properly certified candidates is not grievable under the negotiated grievance procedure in the NARA-AFGE Collective Bargaining Agreement or the administrative grievance procedure in Interim Guidance 300-41, Administrative Grievance Procedure. A bargaining unit employee may grieve under the negotiated grievance procedure if she or he alleges the non-selection was an act of prohibited discrimination under 5 USC 2302(b)(1).

b.    A candidate who believes she or he has been discriminated against because of race, sex, sexual orientation, color, national origin, religion, age, disability, or retaliation may pursue an EEO complaint using the process in NARA 395, Equal Employment Opportunity Complaints Program.

c.    A candidate who believes she or he was not selected for a position or promotion in retaliation or reprisal for whistleblowing or other protected activities, including cooperating with the Office of Inspector General (OIG), should contact the NARA Whistleblower Protection Coordinator in the OIG or the U.S. Office of Special Counsel.

42

000777

**315.16      Reconsideration of rating.**

An applicant may request that a qualification determination made under the merit promotion process be reconsidered by demonstrating that a review is warranted. When an applicant's rating is reconsidered, the following procedures apply:

a.      The applicant must submit a written request to ARC at StaffingClassification@fiscal.treasury.gov, explaining why she or he believes the original decision was not appropriate, what factors were not considered, and any other pertinent information which supports the request and enables the reviewing official to re-evaluate the decision.

b.      The request for reconsideration must be received by ARC within 5 calendar days from the date the applicant was notified that she or he was not qualified or not best qualified.

c      Experience or education gained after the closing date of the announcement cannot be considered in the reconsideration process. In addition, the applicant may not submit additional information or material related to her or his qualifications that was not included in her or his original application.

d.      An ARC HR Specialist other than the HR Specialist who made the original decision will review the original qualification decision. ARC will provide the results of the review to the applicant in writing.

**315.17      Special considerations.**

a.      <u>Priority Consideration</u>. Priority consideration may be given to competitive candidates who were excluded from the best qualified referral certificate due to a procedural, regulatory, or program violation (e.g. wrong qualification determination, failure to consider, improper rating, failure to follow competitive procedure). Employees involuntarily downgraded through no fault of their own are also entitled to priority consideration.

(1)      For individuals not given proper consideration.

i.      If the affected certificate(s) is still active and a selection has not been made, the selecting official is notified immediately, and the certificate is amended to include the applicant;

ii.      If the affected certificate(s) has expired and no selection was made, the individual is not entitled to receive priority consideration for that vacancy; or

iii.      If a selection has already been made from the affected certificate(s), the individual must receive priority consideration for

43

000778

the next appropriate vacancy announcement open anywhere at the agency at the same series, grade, and promotion potential and geographic location of the position previously applied for under competitive procedures for one year. The individual eligible for priority consideration must be considered by the selecting official(s) before other applicants are ranked or referred for selection.

iv.    An individual who is entitled to priority consideration is given such consideration once for each opportunity lost. An individual who has received priority consideration, but is not selected for the position, may be considered for future vacancies through competitive procedures. If no selection is made, the individual remains eligible for priority consideration.

v.    If the selecting official does not select an individual who is referred for priority placement, the selecting official must document her or his consideration and reasons for any non-selection must be maintained as part of the vacancy case file.

(2)    For involuntarily demoted employees.

i.    Employees who are involuntarily demoted in NARA without personal cause or who are in grade retention status are entitled to priority consideration for re-promotion before a vacancy is filled under competitive procedures. This applies to positions at the employee's former grade level, retained grade, or at any intervening grades. The right to this consideration does not apply to a position with promotion potential higher than that of the position held at the time of the demotion and applies only to positions in the local commuting area where the employee was demoted and is currently employed.

ii.    Entitlement to priority consideration begins on the effective date of the action on which the eligibility is based and continues for a two-year period unless the employee declines a reasonable offer of a position as defined in OPM regulations. When a position is offered and declined, the applicant is no longer eligible for priority consideration. The offer and declination must be formally made, in writing.

b.    Special Selection Priority Provisions for Surplus or Displaced Federal Employees. Candidates who meet the provisions of the programs listed below are entitled to special selection priority.

44

000779

(1)     Career Transition Assistance Plan (CTAP). Special selection priority is given to well qualified surplus or displaced NARA employees who apply for NARA vacancies in the local commuting area. A well-qualified, CTAP-eligible employee in the local commuting area must be selected (in accordance with order of selection criteria) before any other candidate is selected from either within or outside of NARA's workforce.

(2)     Reemployment Priority List (RPL). An RPL is the mechanism used to give reemployment consideration to former NARA employees who have been separated by reduction-in-force or other involuntary separation (not due to conduct or performance) or who are fully recovered from a compensable injury after more than one year. A well-qualified, RPL-eligible employee in the local commuting area must be selected (in accordance with order of selection criteria) before any other candidate is selected from either within or outside of NARA's workforce.

(3)     Inter-agency Career Transition Assistance Plan (ICTAP). Special selection priority is given to well qualified, displaced Federal employees who apply for NARA vacancies in the local commuting area. A well-qualified, ICTAP-eligible employee in the local commuting area must be selected (in accordance with order of selection criteria) before any other candidate is selected from outside (but not inside) of NARA's workforce, except as noted in 5 C.F.R. 330.705(c).

(4)     For more information on CTAP, ICTAP, and RPL including eligibility, order of selection, exceptions, and other requirements, see Personnel 300, Chapter 330, Career Transition Assistance Plan, dated November 25, 1997.

c.     <u>Return rights from temporary promotion or detail</u>.

(1)     At the end of a temporary promotion or detail, the employee is either returned to her or his original position or to a position anywhere else in the program office with the same geographic location (as possible) and of a grade and pay rate equivalent to that which the employee originally occupied and for which the employee is qualified. The vacancy announcement (if applicable) and Memorandum of Understanding (MOU) must clearly depict the specific rights to which the employee is entitled.

(2)     An employee returning from a temporary promotion cannot be laterally reassigned to a permanent position at the same grade as that of the temporary promotion. He or she must compete for a permanent promotion to the higher grade.

23

45

000780

## PART 3 – REASSIGNMENTS and CHANGES TO A LOWER GRADE

**315.18        Definition.**

A reassignment is the change of an employee from one position to another without promotion or change to lower grade, level or band. Reassignment includes:

a.        Movement to a position in a new occupational series, or to another position in the same series;

b.        Assignment to a position that has been re-described due to the introduction of a new or revised classification standard;

c.        Assignment to a position that has been re-described as a result of position review; and

d.        Movement to a different position at the same grade but with a change in salary that is the result of different local prevailing wage rates or a different locality payment.

**315.19        Management directed reassignments.**

a.        A supervisor may fill a vacant position by the non-competitive reassignment of a NARA employee who is qualified and eligible for the position. If the reassignment involves an employee in another NARA office, the employee's current supervisor must agree to the reassignment.

b.        An employee who will be reassigned to a different duty station or position must be given at least 30 calendar days of informal notice before providing 15 calendar days of advance, written notice, except in the case of an agency exigency.

**315.20        Employee initiated reassignments.**

a.        An employee may request to be re-assigned to a vacant position. It is the employee's responsibility to identify a new position by contacting the supervisor of the work unit to which he or she would like to be reassigned. Unless there is a different local practice, the employee will request reassignment by submitting a written request to her or his supervisor. The supervisor will forward the employee's request to the appropriate decision-making official. Supervisors have the discretion to fill positions from any source and are not obligated to grant an employee's request for reassignment.

b.        The decision-making official will consider the request and respond to the employee within 15 workdays. The supervisor may request a copy of the employee's resume or job application and interview the employee.

46

000781

c.       If the decision-making official believes the employee is a good candidate for the position, the supervisor of the gaining unit must submit a Reassignment action in FPPS for processing.

d.       Once the Reassignment action is received, the ARC HR Specialist will determine whether the employee is qualified and eligible for the position. Employees must meet qualification and eligibility requirements to be placed in any position.

e.       If the employee is qualified and eligible, ARC will coordinate the effective date of the reassignment with the supervisors of the gaining and losing units.

**315.21       Reassignments outside of the commuting area.**

Employees may be re-assigned to positions within or outside of the local commuting area of their current position. Reassignments outside of the local commuting area require additional consideration because of their impact on the employee and NARA. Issues to consider include the following:

a.       When a current employee is re-assigned outside of the local commuting area and is required to relocate her or his place of residence, NARA may be obligated to pay the employee's relocation expenses in accordance with the Federal Travel Regulation.

b.       Reassignments outside of the commuting area are normally made with the employee's consent because relocation may be disruptive to the employee and her or his family. When the employee agrees to move outside of the area, a reasonable amount of time should be provided to allow the employee to move and find a place to live at the new location.

c.       Involuntary reassignments to positions outside of the commuting area should be made only when absolutely necessary and must be approved in advance by the Chief Human Capital Officer. These actions should take place only when an employee's position is not needed in its current location but is needed in another location. Even when this is the case, consideration should first be given to reassigning the employee to a vacant position at her or his current duty station and then recruiting to fill the position at the new location.

d.       When an employee is involuntarily reassigned to another location and fails to accept the reassignment, the employee may be removed from her or his position and separated from employment with NARA. Under these circumstances, the employee may be entitled to certain benefits including severance pay or discontinued service retirement.

**315.22       Employee requests for change to a lower grade.**

a.       An employee may request to be re-assigned to a lower-graded position or a position with lower (or no) promotion potential than the position she or he currently occupies. The employee will request reassignment by submitting a written request to her

47

000782

or his supervisor. The supervisor will forward the employee's request to the appropriate decision-making official. Supervisors have the discretion to fill positions from any source and are not obligated to grant an employee's request for reassignment.

b.      The decision-making official will consider the request and respond to the employee within 15 workdays. The supervisor may request a copy of the employee's resume or job application and interview the employee.

c.      If the decision-making official believes the employee is a good candidate for the position, the supervisor of the gaining unit must submit a Change to Lower Grade action in FPPS for processing.

d.      Once the Change to Lower Grade action is received, the ARC HR Specialist will determine whether the employee is qualified and eligible for the position. Employees must meet qualification and eligibility requirements to be placed in any position.

e.      If the employee is qualified and eligible, ARC will coordinate the effective date of the change, compute the employee's salary upon placement into the lower graded position, and communicate this information to the employee and supervisor prior to the effective date of the action.

f.      The employee must sign a statement indicating he or she has voluntarily requested assignment to the lower graded position, and that he or she accepts the pay associated with the new position. It is the supervisor's responsibility to obtain this statement and forward it to ARC.


PART 4 - DETAILS


**315.23      Definition and Scope.**

a.      This part covers details of NARA employees to NARA positions in the competitive and excepted service. This part does not cover details to SES positions (see 5 C.F.R. Part 315), other Federal agencies, international organizations (see 5 C.F.R. Part 352), State or local governments, or educational institutions (see 5 C.F.R. Part 334).

b.      Employees may be detailed to meet temporary needs when necessary services cannot be obtained by other practicable means. Details may be used to address situations which result from unexpected workload, special projects, to fill in during another employee's absence, or other reasons. Details may also be appropriate pending classification of a position and/or for training and development purposes.

48

000783

**315.24**         **Effect on pay.**

A detail, including a detail to a higher graded position, does not affect an employee's salary. The employee continues to be paid at the appropriate rate for her or his officially assigned position of record.

**315.25**         **Appropriate use of details vs. temporary promotions.**

When there is a need to temporarily fill a position at a higher grade for less than 120 days, management may decide to fill the position by detail or temporary promotion. If the position is filled by detail, the employee will not receive an increase in pay. If filled by temporary promotion, the employee will receive a temporary increase in pay.

**315.26**         **Restrictions on details.**

    a.         An employee in the competitive service may be detailed to a position in either the competitive service or excepted service.

    b.         An employee serving on an excepted service appointment such as Schedule A, Schedule B, or Veterans Recruitment Appointment (VRA) may be detailed to a position in the competitive service. Other excepted service employees may only be detailed to excepted service positions.

    c.         Temporary and term employees may only be detailed to positions which meet the criteria for temporary and term employment.

**315.27**         **Time limitations.**

Supervisors should limit details to the shortest practicable time and should make continuing efforts to fill positions on a permanent basis. Details are subject to the following time limitations.

    a.         Detail to a position at the same or lower grade, or unclassified duties may be made without competition for up to 120 calendar days, with extensions in 120-calendar day increments for up to a year.

    b.         Detail to a higher-graded position (or position with higher promotion potential than the employee's current position) may be made without competition for up to 120 calendar days. A detail beyond 120 calendar days must be advertised and filled through merit promotion procedures, and may be made or extended up to a maximum of 5 years.

**315.28**         **Qualifications requirements.**

Generally, employees are not required to meet OPM qualification standards for the position to which detailed, except for any minimum educational, licensure and certification requirements. However, if a detail is made through competitive procedures with the potential for permanent

49

000784

placement in the position, employees will be required to meet the qualification standards for the position.

**315.29      Documentation.**

a.      If the detail assignment is 30 calendar days or less, the detail position is the same grade or lower, and the detail organization has the same operating expenses / revolving fund allocation percentage ("split"), then no documentation is required, regardless of the duration of the detail;

b.      If any of the conditions in paragraph 315.29a are not true, the gaining office must submit a Detail action in FPPS, with a position description for the detail position attached.

PART 5 – AUTHORITIES AND RECORDS MANAGEMENT

**315.30      Authorities.**

a.      5 U.S.C. § 2301, Merit System Principles, are rules established to ensure fair and open recruitment, competition, and employment practices that are free of political influence or other, non-merit factors.

b.      5 U.S.C. § 2302, Prohibited Personnel Practices, are employment-related activities that are prohibited in the Federal workforce because they violate the merit system through some form of employment discrimination, retaliation, improper hiring practices, or failure to adhere to laws, rules, or regulations that directly concern the merit system principles.

c.      5 C.F.R Part 330, Recruitment, Selection, and Placement (General), and 5 C.F.R. Part 335, Promotion and Internal Placement, establish regulations for merit promotion and internal promotion procedures.

**315.31      Public Release.**

Unlimited.  This directive is approved for public release.

**315.32      Records Management.**

Records created as part of the processes described in this directive are covered in General Records Schedule 2.1, Employee Acquisition Records. These records are generally maintained by the ARC Human Resources Staffing Specialist. Supervisors are required to retain some records created by or under this directive. Contact Corporate Records Management (CRM) with any questions regarding the management of these records.

50

000785